IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EXPRESS MOBILE, INC.,

Plaintiff,

v.

WEB.COM GROUP, INC.,

Defendant.

Civil Action No. 19-cv-1936-RGA

MEMORANDUM

Before me is Defendant's motion requesting that I transfer venue to the Middle District of Florida, Jacksonville Division pursuant to 28 U.S.C. § 1404(a).  (D.I. 15).  Plaintiff opposes this motion to transfer.  The motion is fully briefed.  (D.I. 16, 22, 25).  I grant Defendant's motion to transfer.

## I.    BACKGROUND

Plaintiff Express Mobile filed a complaint for patent infringement against Defendant Web.com on October 11, 2019.  (D.I. 1).  Plaintiff is a Delaware corporation that has "a place of business" in Novato, California.  (*Id*. ¶ 2; see D.I. 23-1, Ex. 1 at ¶ 3).  (In earlier litigation, Plaintiff claimed a "place of business" in Plano, Texas.  *See, e.g., Express Mobile, Inc. v. Liquid Web, LLC*, No. 18-1177, D.I. 1 at ¶ 2 (D. Del. Aug. 4, 2018)).  Defendant is a Delaware corporation that maintains its headquarters and principal place of business in Jacksonville, Florida.  (D.I. 16-1, Ex. 1 at ¶ 4).  Pursuant to § 1404(a), Defendant now seeks to transfer this action to the Middle District of Florida, Jacksonville Division.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or

1

to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party

seeking transfer has the burden of establishing the need for transfer. *See Jumara v. State Farm*

*Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). "[U]nless the balance of convenience of the parties is

strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco*

*Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970).

Defendant's principal place of business is in the Middle District of Florida. (D.I. 16-1,

Ex. 1 at ¶ 4). Therefore, the Middle District of Florida is a district where this action could have

been brought within the meaning of § 1404(a). I must now consider the merits of Defendant's

argument.

## II.    DISCUSSION

Beyond the three enumerated factors ("convenience of parties, convenience of witnesses,

or interests of justice") listed in § 1404(a), the Third Circuit considers all relevant public and

private factors. *See Jumara*, 55 F.3d at 879-80. The private interests include: "(1) plaintiff's

forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether

the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative

physical and financial condition; (5) the convenience of the witnesses-but only to the extent that

the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of

books and records (similarly limited to the extent that the files could not be produced in the

alternative forum)." *Id*. (citations omitted and numbering added).

The public interests include: "(7) the enforceability of the judgment; (8) practical

considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative

administrative difficulty in the two fora resulting from court congestion; (10) the local interest in

deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity

2

of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted and numbering added).

Plaintiff, a Delaware corporation, has chosen Delaware as a forum. A plaintiff's choice is normally given "paramount consideration in any determination of a transfer request." *Shutte,* 431 F.2d at 25. By "paramount," I understand the Court of Appeals to indicate that the plaintiff's choice is the most important factor. That is the law. But, beyond that, the balancing of factors is going to be influenced by other factors which are related to where a plaintiff is physically located, etc. Thus, it is still the most important factor when a plaintiff has a principal place of business outside Delaware or has no connection to Delaware other than its choice to sue here, or other than its choice to sue here and its Delaware incorporation. But, in the overall balancing, while such a plaintiff's choice will still be the most important factor, it will not dominate the balancing to the same extent as it otherwise might. *Signal Tech, LLC v. Analog Devices, Inc.,* 2012 WL 1134723 at *2 (D. Del. Apr. 3, 2012). Here, Plaintiff maintains its principal place of business in Novato (or possibly Larkspur – *see* D.I. 16-1, Ex. 2 at ¶ 2), California, and has no offices or employees in Delaware. (D.I. 16 at 4). Accordingly, Plaintiff's choice will be given paramount consideration, but it will not carry the same weight in the balancing as would a similar decision by a company with a principal place of business in Delaware. *See Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026 at *3 (D. Del. Feb. 13, 2015) (affording the plaintiff's choice lessened weight in the balancing, although it was incorporated in Delaware, when the company did not have any operations or employees in Delaware).

Defendant prefers the Middle District of Florida, Jacksonville Division, where it maintains its principal place of business. Defendant has legitimate and rational reasons for its

alternative forum preference.  This factor, however, is not given the same weight as a plaintiff's preference.  *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012).

Plaintiff argues the infringement claim over Defendant's website building instrumentalities arose nationwide because its products can be bought online in any market. (D.I. 22 at 10).  The claim of patent infringement arises everywhere the accused products are sold or used.  *Round Rock Research LLC v. ASUSTeK Computer Inc.,* 967 F. Supp. 2d 969, 980 (D. Del. 2013).  While Plaintiff is correct the infringement occurs nationwide, infringement claims "have even deeper roots in the forum where the accused products were developed." *Memory Integrity,* 2015 WL 632026 at *3; *see also In re Hoffmann–La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor").  Here, Delaware has no connection to the development of the accused infringing products.  (D.I. 16-1, Ex. 1 at ¶¶ 10-11, 19-23).  Defendant's Website Builder programs were developed in its headquarters in the Middle District of Florida, and "its legacy acquired systems were managed from those same headquarters after the various acquisitions at issue."  (D.I. 16 at 12; see D.I. 16-1, Ex. 1 at ¶ 10).  Thus, this factor slightly favors transfer as the alleged infringing products were developed in Florida, but it is given minimal weight.

In assessing the convenience of the parties, the Court examines "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."

4

*Memory Integrity,* 2015 WL 632026 at *4 (quoting *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012)).

Here, Defendant's headquarters are in the Middle District of Florida.  Litigation in that district would certainly be more convenient for Defendant.  Plaintiff argues Delaware is more convenient for Plaintiff than Florida due to the availability of "direct flights."  (D.I. 22 at 14). Defendant contends that Jacksonville is 100 miles closer to Plaintiff's headquarters than Delaware is, but does not provide any evidence to show the availability of direct flights to Jacksonville.  (D.I. 25 at 5).[1]  Overall, given Plaintiff's location in California, both Delaware and Florida will be inconvenient for Plaintiff, although it seems to me that Florida is slightly more inconvenient.

Plaintiff argues Defendant is a $2 billion company that would not suffer any undue financial burden in litigating in Delaware.  (D.I. 22 at 18).  Defendant certainly has the capability of litigating in Delaware.  However, "[i]t is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties*." Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, 2014 WL 4829027 at 4* (D. Del Sept. 25, 2014).  Here, it is undoubtedly substantially more convenient for Defendant to litigate where its principal place of business is located.  Plaintiff's Novato place of business is not located near either forum.  Thus, overall, the convenience to the parties factor favors transfer.

---

[1] I do not see that either party has taken the time to back up their arguments with evidence on "direct flights."  I went to expedia.com and saw that on August 17, 2020 (to pick a random date), there are seven non-stop flights from San Francisco International (which appears to be the airport a person living in Novato, California, would choose to fly out of) to Philadelphia International Airport, and none from San Francisco International to Jacksonville International Airport.  The one-stop flights to Jacksonville appear to be in the seven-to-eight hour range (at best), whereas the non-stop flights to Philadelphia appear to be about 5 ½ hours.  Defendant's argument based on the distance as the crow flies is at best an irrelevancy that is not very difficult to see through.

Defendant argues the Middle District of Florida will also be more convenient for the witnesses. The bulk of witnesses usually comes from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, "the vast majority of Web.com's employees with knowledge of the design, development, and implementation of the Website Builder platforms – and the coaching of customers on website building – are located in the Middle District of Florida." (D.I. 16 at 13). It is more likely any former employees reside in the Middle District of Florida than anywhere else, and there is virtually no likelihood that they reside in Delaware or nearby where they would be subject to this court's subpoena power. *See Signal Tech, LLC*, 2012 WL 1134723 at *3 (noting ex-employees "would not be subject to this Court's subpoena power, but would stand a much better chance of continuing to be subject to the subpoena power" of the district where Defendant's headquarters are located). Plaintiff has not named any witnesses who currently reside in Delaware, or within 100 miles of the courthouse in Wilmington. Rather, most are in California. (D.I. 23-1, Ex. 1 ¶¶ 10-12). One of Plaintiff's four Directors and Board Members, Jeff Samuelson, resides in New York. (*Id.* ¶ 11). However, Mr. Samuelson is not a co-inventor of any patents at issue and would likely only be able to offer testimony on the company's "business operations." *Id.* The likelihood that Mr. Samuelson's testimony would actually be relevant is doubtful. For any other potential Plaintiff's witnesses, it will be inconvenient in both Delaware and Florida. Thus, this factor favors transfer as the bulk of non-expert witnesses are more likely to reside in the Middle District of Florida than anywhere else, and there might be relevant witnesses who are subject to the subpoena power of the Florida Court but not of this Court.

Defendant also argues the location of books and records favors transfer as "Web.com's computers, servers, and other documentation are either located in, or most easily accessed from"

the Middle District of Florida.  (D.I. 16 at 14).  The bulk of the relevant evidence usually comes

from the accused infringer in patent infringement cases.  *See In re Genentech*, 566 F.3d at 1345.

While it may not be difficult to produce these documents in Delaware given modern technology,

this factor cannot be ignored.  *In re Link_A_Media Devices Corp.,* 662 F.3d 1221, 1224 (Fed.

Cir. 2011).  Thus, this factor favors transfer but is given minimal weight.

      Both parties concede enforceability of judgment is not an issue in this case

      Practical considerations that could make the trial easy, expeditious, or inexpensive are

relatively mixed.  I can fairly assume litigation in the Middle District of Florida would be more

inexpensive for Defendant as its principal place of business is in the same district.  Plaintiff is not

located close to either forum, so any travel will be inconvenient, and the expense of trial will

likely be comparable in either location.

      Currently, the COVID-19 pandemic is ongoing.  Hopefully, things will get better, but the

pandemic has highlighted that there can be risks associated with travel. Some people who would

not have been worried about travel before the pandemic are now reluctant to travel.  I believe it

is appropriate to give slightly greater weight to the possibility of less risk associated with less

travel, which would favor the Florida venue.

      On the other hand, the Court's familiarity with the patents and technology at issue is a

"legitimate concern to factor into the analysis."  *Round Rock Research LLC*, 967 F.Supp.2d at

982.  Plaintiff has "filed [thirty-three] actions in the District of Delaware asserting at least one of

the patents asserted in the present lawsuit and this Court has been assigned to 28 of those."  (D.I.

22 at 6).  Thirty of the thirty-three actions have been resolved.  (D.I. 23-5).  Most of them have

involved no work on my part. *See, e.g., Express Mobile, Inc. v. eGrove Systems Corp*., No. 17-

703, 2020 WL 109251 at *2 n.2 (D. Del. Jan. 9, 2020) (reciting settlement amounts), app.

pending, Nos. 20-1511, 20-1617 (Fed. Cir.).  One case has been stayed pending settlement (No. 18-1176).  The only other open case was filed by Plaintiff the same day as this lawsuit (No. 19-1937), and it involves the same patents.  However, it is too early in the proceeding to afford any significant weight to the co-pending case.  *See Signal Tech, LLC*, 2012 WL 1134723 at *4.  I have undertaken claim construction in a thirty-fourth case, a declaratory judgment action (No. 19-439, D.I. 137).  *Id.*  Plaintiff has also filed at least sixty patent cases in other districts, principally the Northern District of California and the Eastern District of Texas, but also in two other districts.  *See eGrove*, 2020 WL 109251 at *2 n.2.  Thus, practical considerations may be somewhat balanced, as, on the one hand, the overall expense and difficulty of litigating in Florida should be less, but, on the other hand, I have some familiarity with at least some of Plaintiff's patents.  I consider these considerations to cancel each other out.  Thus, this factor is neutral.

For court congestion, both sides have presented evidence showing why their preferred forum is favored.  However, I am not persuaded by either sides' arguments.  (District Judge Miller of the Eastern District of Arkansas testified before Congress on behalf of the federal judiciary on June 30, 2020, where the Judicial Conference of the United States recommended one new judgeship in Delaware to go along with the four existing ones; the same testimony recommended six new judgeships in the Middle District of Florida to go along with the fifteen existing ones.  The recommendations suggest that the Middle District has a greater need for additional judgeships, but as the parties have not argued the pros and cons of using these recommendations, I do not rely upon them.).  I treat this factor as neutral.

Defendant argues the local interest favors Florida as the products were developed at Defendant's headquarters in Florida.  (D.I. 16 at 15-16).  Defendant contends the Middle District

of Florida has an interest in deciding local controversies at home. *Id*. However, as Plaintiff notes, "patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Defendant is a global company whose product can be used anywhere the internet exists. Thus, this factor is neutral.

The public policy factor is likewise neutral. Delaware's public policy "encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *Signal Tech, LLC*, 2012 WL 1134723 at *4. However, this generally applies to the use of Delaware's state courts, including the "highly-respected Court of Chancery," to resolve disputes of Delaware law. *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 604 n.9 (D. Del. 2012). Plaintiff brings federal patent claims, which "are resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence" in this District and in the Middle District of Florida. *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 228 (D. Del. 2017). Thus, the public policy of Delaware factor is neutral.

The familiarity of state law in diversity cases is not at issue because these claims do not implicate state law.

Factors (2), (3), (4), (5), and (6) all favor transfer while factor (1) disfavors transfer. Plaintiff's choice is paramount, but it does not carry the same weight as it would for a corporation with a principal place of business in this state. The issue now is whether the balance of the factors is sufficiently great enough to outweigh Plaintiff's choice of forum.

I also consider *Link_A_Media*. It does not compel the decision here, but it provides a relevant data point. There, a plaintiff without any connection to Delaware brought suit in Delaware against a defendant incorporated in Delaware, but headquartered in California. 662

9

F.3d at 1222.  The Federal Circuit held the district court clearly abused its discretion by denying Defendant's motion to transfer to California.  *Id*. at 1223.  The "district court placed far too much weight on the plaintiff's choice of forum," and its "heavy reliance on the fact that [defendant] was incorporated in Delaware was similarly inappropriate."  *Id*.  I do not think *Link_A_Media* alone compels transfer here because Plaintiff is incorporated in Delaware and, unlike in *Link_A_Media*, does not have any connection to the transferee district.  However, neither party has any connection to Delaware other than the fact they are both incorporated in the state.  A party's state of incorporation cannot be a dispositive fact in the venue transfer analysis.  *Id*. at 1224.  Factors (2), (3), (4), (5), and (6) together tip the balance of convenience sufficiently in Defendant's favor.  Thus, I believe it would be an appropriate exercise of discretion to grant Defendant's motion.  In totality, the other private interest factors outweigh Plaintiff's forum preference, which is not as consequential as it would be if Plaintiff had any place of business or witnesses in Delaware.

Thus, this 14th day of July, 2020, I will enter an order transferring this case to the United States District Court for the Middle District of Florida, Jacksonville Division.


   /s/ Richard G. Andrews
United States District Judge